[No. 42497.    En Banc.    November 30, 1972.]

LANGSTON TABOR et al., *Petitioners,* v. FRANK MOORE et al., *Respondents.*

614

*David Allen, John Gant,* and *Lar Halpern* (*Cornelius Peck,* of counsel), for petitioners.

*Christopher T. Bayley, Prosecuting Attorney,* and *Kenneth W. Sharaga, Deputy,* for respondents.

*Stimson Bullitt,* pro se.

*Robert T. Czeisler,* amicus curiae.

HUNTER, J.—This is an action by the plaintiffs (petitioners), three taxpayers, challenging the procedures of the defendants (respondents), the Seattle Police Department and the King County Prosecuting Attorney and their officers and agents, in holding persons arrested without warrants on "open charges" or "suspicion."

The plaintiffs, asserting their standing as taxpayers, allege: (1) that the defendants are engaged in a deliberate "continuing and ongoing practice of holding persons arrested without warrants on 'open charges' or 'suspicion' " for unreasonable lengths of time; (2) that such practices are illegal and violative of the fourth, sixth, eighth and fourteenth amendments to the United States Constitution and article 1 of the Washington State Constitution; and (3) that these illegal acts necessarily involve the illegal expenditure of public funds which imposes a burden upon the taxpayers.

They seek alternatively or cumulatively declaratory, injunctive and mandamus relief against the defendants ordering them to cease and desist from the alleged practices. The plaintiffs request that the writ of mandamus require the

defendants to take arrested persons before a magistrate without unreasonable delay and that an order be entered prescribing personal recognizance and bail procedures. They also request that the defendants be required to submit a plan to implement the judgment of the court. And, they urge that such a plan require that arrested persons be brought before a magistrate within a fixed number of hours unless an application for an extension of time, based upon a showing of good cause, be made to the presiding judge.

The trial judge concluded that the plaintiffs lacked standing to prosecute this action and granted the defendants' motion for a summary judgment. The Court of Appeals affirmed the finding of the trial judge but it did not reach the question of standing, reasoning instead that the judiciary lacks the power to directly supervise the law enforcement officers under the separation of powers doctrine. From the Court of Appeals decision, the plaintiffs petitioned this court for review, which we granted.

The plaintiffs contend that the Court of Appeals was in error when it determined that the judiciary lacks the power to grant the requested relief. We agree.

The recent case of *Johnson v. Moore,* 80 Wn.2d 531, 496 P.2d 334 (1972) is dispositive of this issue. In all fairness, it should be noted that the *Johnson* case was published after the Court of Appeals rendered its decision.

Inherent within the reasoning and logic of the *Johnson* case is the conclusion that the relief requested may be granted by our judiciary. In that case three prisoners who were held on "suspicion" for varying lengths of time filed a class action seeking relief identical to that requested in the instant case. In reversing the trial court holding that their suit was inappropriate as a class action, we stated that we were remanding the case

to put the court in a position to render broad remedial relief for allegedly unconstitutional action by means of declaratory judgment or injunction . . .

*Johnson v. Moore,* 80 Wn.2d 531, 536, 496 P.2d 334 (1972).

We believe it to be basic that if the alleged unconstitu-

tional practices do exist in the Seattle or King County jails, the superior court is in a position to render the relief requested by the plaintiffs.

Granting this type of relief is not novel. Federal courts have long adhered to the rule that they will be alert to adjust their remedies so as to grant the necessary relief where federally protected rights have been invaded. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971), and cases cited therein.

*Hague v. CIO,* 307 U.S. 496, 83 L. Ed. 1423, 59 S. Ct. 954 (1939), was one of the first cases to uphold the power of the federal courts to enjoin unconstitutional police practices. In that case the Jersey City officials had a deliberate policy of using force and violence to interfere with the First Amendment rights of the members of the CIO. In response to said policy, the district court issued an injunction which (1) enjoined the city officials from interfering illegally, via illegal searches and seizures, illegal arrests and physical violence, with the rights of the members of the CIO to communicate their views as individuals to others on the streets in an orderly and peaceable manner, and (2) enjoined the enforcement of an ordinance prohibiting the distribution of literature on the street without a permit, which the court found to be unconstitutional. Since *Hague,* the federal courts have used the injunctive processes in a number of cases where illegal police practices have been proved. *See* Note, 78 Yale L.J. 143 (1968) and cases discussed therein.

The plaintiffs also contend the trial court erred in holding that they lacked standing to bring this action. We disagree.

The plaintiffs instituted this action as a taxpayer's action. They allege that the illegal expenditure of funds by the defendants imposes a tax burden upon them. They allege no direct, special or pecuniary interest in the outcome of their action. Their interest in the subject matter of this litigation is no different than that of other taxpayers.

In the absence of a special interest in the outcome of a suit, a condition precedent to maintaining a taxpayer's action against public officials for the illegal expenditure of funds is that demand be made upon the Attorney General to institute proceedings to prevent the illegal expenditure of funds. We stated in *Reiter v. Wallgren,* 28 Wn.2d 872, 876, 184 P.2d 571 (1947):

> In the absence of a statute governing suits by taxpayers, a demand upon the proper public officer to take appropriate action is a condition precedent to the maintenance of a taxpayer's action challenging the validity and legality of what public officers are intending to do or have done, unless facts are alleged which sufficiently show that the demand to bring suit would have been useless.

*Accord, Fransen v. Board of Natural Resources,* 66 Wn.2d 672, 404 P.2d 432 (1965), and cases cited therein. *See Miller v. Pasco,* 50 Wn.2d 229, 310 P.2d 863 (1957) (wherein the plaintiff was deemed to have standing to prosecute an action against the City of Pasco since the Attorney General had refused to institute the action after having been requested to do so), and *Jones v. Centralia,* 157 Wash. 194, 289 P. 3 (1930) (wherein it was held that until the Attorney General refuses to act, no right of action for recovery of funds improperly expended by a public official exists in favor of an individual taxpayer).

Plaintiffs do not allege that they made demand upon the Attorney General to institute proceedings concerning the alleged actions. Nor do they allege that "demand to bring suit would have been useless." *Reiter v. Wallgren, supra.* Thus the plaintiffs lack standing to prosecute the instant action.

Having determined that the plaintiffs lack standing to prosecute the instant action due to their failure to make demand upon the Attorney General, we do not reach the other arguments raised by the defendant as to the plaintiffs' inability to prosecute this action for lack of standing.

Consistent with this opinion, the holding of the Court of

Appeals, wherein it stated that the superior court lacked the power to grant the relief requested, is reversed. And, the trial court's summary judgment based on plaintiffs' lack of standing is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, STAFFORD, WRIGHT, and UTTER, JJ., concur.

HALE, J. (concurring in the result)—I agree with this court that the plaintiffs lack standing to prosecute the action. But I agree, too, with the Court of Appeals that, under the constitutions and the separation of powers principle, the courts lack the general power to directly supervise the executive branch of government.