[No. 44793. En Banc. March 2, 1978.]

THE STATE OF WASHINGTON, *on the Relation of K. Kenneth Keeler III, Respondent,* v. THE PORT OF PENINSULA, ET AL, *Appellants,* THE STATE OF WASHINGTON, ET AL, *Respondents.*

*Hugh E. Fountain, Jr.,* for appellants.

*Slade Gorton, Attorney General,* and *James K. Pharris, Assistant,* for respondents.

UTTER, J.—The Port of Peninsula appeals from a superior court judgment which allowed the State to intervene in this lawsuit and also granted a permanent injunction against the Port as requested by the State. The original action, eventually dismissed, was brought against the Port by Kenneth Keeler, a resident of the Port of Peninsula district. We affirm the action of the Superior Court.

Kenneth Keeler brought an action on October 9, 1975, alleging the Port was operating a facility outside its boundaries and that it intended to tax residents within those boundaries to finance the facility. He asked for an order (1) prohibiting the Port from operating that facility, (2) requiring it to divest itself of the out–of–district property, and (3) prohibiting the taxation of property within the port district to support the outside facility. The State filed a complaint in intervention on November 3, 1975, alleging precisely the same facts and prayed for a permanent injunction preventing the Port from operating a facility outside its district and enjoining the Port from levying taxes and making expenditures for the benefit of the out–of–district facility.

Thereafter, the Port filed a motion to dismiss Keeler's complaint, alleging that the Port was not in violation of any state law. In a later motion, the Port also asked the court to dismiss the intervenor's complaint on the ground that there was a difference in legal theory in the actions of the intervenor and plaintiff and that allowing intervention would unnecessarily complicate the suit and prejudice the Port.

The respective claims of the parties were subsequently presented to the Superior Court and at that time the Port

also alleged per *Tabor v. Moore,* 81 Wn.2d 613, 503 P.2d 736 (1972), that plaintiff Keeler lacked standing to sue inasmuch as he had failed to make demand upon the Attorney General before commencing his private suit.

In chronological order, the trial court (1) granted the State's motion to intervene; (2) dismissed Keeler's complaint; and (3) granted the State's request for injunctive relief on the ground that the Port's operation of a facility outside its own district exceeded its authority. That injunction permanently restrained and enjoined the Port from "acquiring, constructing, improving, maintaining or using any facilities located outside the boundaries of the said Port of Peninsula, as the said boundaries are or may hereafter be established according to law, or from levying taxes or expending any public monies for the purposes of acquiring, constructing, improving, maintaining or using facilities located outside the boundaries of the said Port of Peninsula . . ." The Port has appealed, citing both procedural and substantive grounds.

## I. Procedural Issues

The Port assigns error to (1) the order in which the court decided the motion to dismiss the original action and the motion to intervene, and (2) the decision to grant the motion to intervene. We find no error in either action.

A trial court, as a general rule, has the discretion to rule on motions in whatever order the judge believes is most logical and efficient. *Davis v. Thiede,* 138 Ind. App. 537, 203 N.E.2d 835 (1965). The trial judge's action is reviewable for abuse of discretion only. Here, the trial judge's ruling, eliminating the need for intervenor to file another independent suit by allowing intervention prior to dismissing the original plaintiff, was an exercise in judicial economy. Given the sequence in which the motions were filed and the desire of the court to obviate commencing a new action, we cannot say the court's act violated the reasonable person standard applicable here. *Rehak v. Rehak,* 1

Wn. App. 963, 465 P.2d 687 (1970); *Lunsford v. Waldrip,* 6 Wn. App. 426, 493 P.2d 789, 51 A.L.R.3d 513 (1972).

 The federal courts recognize the practicality of allowing discretion to retain an intervenor's suit as a separate action, even if the main action falls. In *Fuller v. Volk,* 351 F.2d 323, 329 (3d Cir. 1965), the court recognized "[b]y allowing the suit to continue with respect to the intervening party, the court can avoid the senseless 'delay and expense of a new suit, which at long last will merely bring the parties to the point where they now are.'" *See also Miller & Miller Auctioneers, Inc. v. G.W. Murphy Indus., Inc.,* 472 F.2d 893 (10th Cir. 1973).

The Port urges intervention was improper because not all issues of fact and law are the same in both cases and allowing the intervention was prejudicial because it required the Port to defend against an additional party. The propriety of intervention is also an issue within the trial court's discretion, and the trial court's ruling will be reversed only for abuse of that discretion. *Ford v. Logan,* 79 Wn.2d 147, 483 P.2d 1247 (1971). Intervention may be allowed when the intervention action and main action have "a question of law or fact in common," CR 24(b)(2), and is disallowed when it will unduly delay or prejudice the adjudication of the rights of the original parties. It is clear from the wording of the rule itself that exact parallelism between the original action and the intervention action is not required.

Both Keeler and the State were complaining of the same general activity. Appellant fails to show any actual prejudice by the State's intervention. The State's motion was made within a month of filing the original action and well before trial. No different defense was required and proceedings were not delayed. No abuse of discretion has been shown.

## II. THE PROPRIETY OF THE PORT'S ACTION

 The purposes for which a port district may be formed are set forth in RCW 53.04.010. That statute limits activities for which port commissions are organized to those

carried on "within the district." The powers of a port district are set out in RCW 53.08. Because the powers are in turn related only to the authorized purpose of the district, these powers may only be exercised as provided by statute "within the district." The Port has cited nothing which would allow it to expand the operation outside the physical boundaries of the Port. RCW 53.08.110 authorizes the Port to accept "gifts of real and personal property and to expend in improvements and betterment such amount as may be necessary." The statute does not expand the authority of the ports to act outside their boundaries. The statutorily defined purposes for which port districts are formed necessarily limit the exercise of power to activities within the district.

In *Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 382 P.2d 639 (1963), this court interpreted water district law prohibiting overlapping of water districts to evidence a legislative intent that water districts operate within their own districts. The same legislative intent may be discerned here from the express limitation on exercise of purposes of the port district "within the district" found in RCW 53.04.010.

The actions of the trial court are affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Petition for rehearing denied April 20, 1978.