[No. 35039. En Banc. May 19, 1960.]

DONALD DARRELL THOMPSON, *Respondent*, v. DORIS ANN THOMPSON, *Appellant*.[1]

[1]Reported in 352 P. (2d) 179.

*Lundin, Barto & Goucher*, for appellant.

*Jonson & Jonson*, for respondent.

HUNTER, J.—This appeal results from an order of the trial court modifying the custody provision of a divorce decree.

The plaintiff father and defendant mother were each awarded a decree of divorce on November 28, 1955, in the Superior Court of King county. The legal custody of their one child, Raymond, born on September 22, 1952, was granted to both parties. The decree provided, however, that the physical custody of the child be awarded to the maternal grandmother, Mrs. Henry Lingenfelter, residing at Union Town in Whitman county, Washington, subject to further order of the court. The decree also provided that upon notice to the grandmother the plaintiff may visit the child on the first and third weekend of each month and two weeks during the summer by taking the child to the home of the paternal grandmother in Asotin, Washington, on those occasions, ex-

cept that on the summer visitations the child would be taken by the father any place within the state. The decree further provided that the child should not be permanently removed from the state of Washington without order of the court.

On November 30, 1955, the plaintiff was drafted into the military service where he remained until October 31, 1957. During this time on all his military furloughs he visited with his son, and again visited with him in the early part of November 1957. The same month he married his present wife. He has since maintained, in Seattle, a four-bedroom home for his wife and her four children by a prior marriage, whose ages range from five to fifteen years. The four children, of the plaintiff's second wife, are being raised as Roman Catholics, but the father asserts he will raise the minor son as a Lutheran, the defendant mother's faith. Plaintiff is employed at the Boeing Airplane Company, earning take-home pay of $350 per month.

On June 2, 1956, the defendant married her present husband, Roy Silflow, who operates his 335-acre farm and leased land of 230 acres. The Silflow farm is near Kendrick, Idaho, which is about 30 miles south of Lewiston, Idaho. His net income is approximately $15,000 a year from these operations.

The Silflows have a fourteen-room house on the farm in which they reside. From July 4, 1956, and for the remainder of the year, the minor son Raymond was with his mother about two weeks of each month, and thereafter resided with her continuously, at the Silflows. The record shows, however, that the maternal grandmother and the grandfather, who was a farmer, spent a substantial part of the winter months with the Silflows, and frequently visited them on other occasions.

In the spring of 1958, the minor son attended kindergarten at Kendrick, and in June of that year attended Bible school for two weeks at the Lutheran Church near their home.

On January 16, 1958, the defendant filed a petition in the Superior Court of King county seeking a modification of the original divorce decree, asking that physical custody of the

child be awarded to her; that the plaintiff be allowed visitation privileges of two weekends each year and be permitted to have the boy for two weeks each summer. Plaintiff cross-petitioned for a modification of the decree, placing physical custody of the child in the father.

At the conclusion of the hearing, the court found that the home established by the defendant and her husband, Roy Silflow, was a fit and proper home in which to rear the said minor child; that the home established by the plaintiff and his present wife was also a fit and proper home; that the defendant removed said child from the state of Washington, establishing his permanent residence in the Silflow home in Kendrick, Idaho, without the consent of the court, and denied plaintiff his rights of visitation with said child, in willful violation of the divorce decree; that the defendant petitioner did not come into court with clean hands and her petition should be denied; that the child has a speech impediment caused by a physical handicap which can be corrected through instruction; and that it would be for the best interest and welfare of the child to award his custody to the plaintiff because he would be able to receive better treatment and instruction in correction of his speech impairment in Seattle than in Idaho. In accordance with these findings, judgment was entered modifying the original divorce decree by placing the physical custody of the child with the plaintiff father, reserving to the mother liberal rights of visitation, and providing that the child should spend alternate Christmas and Easter holidays with the mother, and summer vacations each year from June 15 to August 1. The defendant mother appeals.

The appellant's assignments of error go to two findings of the trial court: (1) that the mother willfully violated the original divorce decree by removing the child permanently from the state of Washington, and denying the father his rights of visitation; and she therefore did not come into court with clean hands; (2) that the child would receive better corrective treatment for his speech impairment in Seattle than in Idaho, and should therefore be placed in the custody of the father who resides in Seattle.

■ At the outset, we have a case where both the father and mother were determined in the original divorce decree to be fit and proper persons to have the custody of their child. The court has presently found the homes of both the father and mother fit and proper homes in which to raise their child. The record discloses that for two years immediately prior to the hearing the child lived with his mother in the Silflow home during his fourth and fifth years, except on those occasions when he was with his maternal grandmother; that the home of the father in Seattle was strange and unknown to the child, prior to the hearing, and the stepmother, stepsisters, and brother were strangers except for an acquaintance over one weekend. Under these circumstances, applying the established rules of guidance followed by this court in child-custody cases, it clearly would not be for the best interest and welfare of a five-year-old child to be uprooted from its established home, taken away from the mother and placed in a strange home, family, and surroundings with its father, in the absence of other controlling circumstances. *Johnson v. Johnson*, 53 Wn. (2d) 107, 330 P. (2d) 1075 (1958); *Chatwood v. Chatwood*, 44 Wn. (2d) 233, 266 P. (2d) 782 (1954). The case then narrows down to the two issues raised by appellant's assignments of error, which we will consider in order.

■■ Does the record support the finding of a willful violation by the appellant of the divorce decree?

The record discloses that in January 1956, about two and one-half months after the father had been drafted into military service, the mother was contemplating remarriage; that the maternal grandmother, Mrs. Lingenfelter, made inquiry by letter of her daughter's attorney concerning the effect of the decree upon her daughter's marriage and the establishment of her home in Kendrick, Idaho, as to the custody of the child which she then had. The letter of counsel dated January 20, 1956, in response to this inquiry, set forth the terms of the decree relative to the custody and visitation provisions, not including, however, the provision against permanently removing the child from the state of Washington. The letter contained the following comments:

" . . .

"There is no reason for you not putting Ray in Doris's possession as soon as she is married. As Mr. Thompson is in the service, you probably will not be bothered with his request for the child to be in his possession unless he is home on a furlough. I hope you will have no further trouble in this regard. I don't imagine he will be at all reasonable as to anything.

"I haven't succeeded in getting anything on our fee or the costs at all yet. I wrote a letter trying to get him to pay $50.00 a month and his attorney, Mr. O'Sullivan said he had advised Thompson of it, but I haven't heard anything since.

"If Ray is not well enough to go visiting, you can tell him so and need not turn him over to Thompson. If he doesn't perform his part of the decree, you would be justified in telling him he must do his part before he can expect to get the benefits of it.

"I would much prefer your getting along with him as well as you can and not alienate him because after Ray has been in his mother's control for a considerable period of time she should apply to have the decree modified so that she have custody instead of you.

"I hope you will visit Doris and Ray often and keep a record of your visitations so that you can testify as to how often you have seen Ray and know how fine he will have been treated by Doris. . . ."

The appellant filed her petition for modification on January 10, 1958. Subsequent thereto, on February 26, 1958, the appellant wrote the following letter to the respondent:

" . . . In regard to your letter of Feb. 23rd, I do not think it would be wise for you to have Ray now. Even for the week-end. I believe that you heard from your lawyer saying that my lawyer said no. And as far as I'm concern that goes for the week-ends as well as any other time. The last time you had Ray was enough. We were all very hurt at the things Ray told us. So from now on you deal with my lawyer, . . . And don't bother about coming up here and trying to get Ray anyway. Because my answer is no. . . ."

The respondent testified he was denied his rights of visitation on three occasions which we resolve from the record included the occasion he received the letter and on two occasions thereafter, until a visitation was arranged by the re-

spondent's counsel before the hearing in July of that year. Clearly, the appellant violated the decree in denying the respondent his rights of visitation; however, we believe the above facts include mitigating circumstances and that the finding of a willful violation of the decree is more technical than substantial. As to the second part of the finding relating to appellant's violation of the decree, we do not believe the record supports the finding of the minor child's permanent removal from the state of Washington. There was no showing of intention to remove the child from beyond the exercise of the jurisdiction of the superior court of this state, nor an effort to interfere with the accessibility of the child for the respondent's visitations, by the establishment of the home in Kendrick, Idaho. The removal was not permanent in the contemplation of the decree.

In any event, it was error for the trial court to dismiss the appellant's petition on the grounds of her willful violation of the decree, for the reason that she did not come into court with clean hands.

Punishment of the parent for contempt may not be visited upon the child in custody cases. The custody of the child is not to be used as a reward or punishment for the conduct of the parents. *Malfait v. Malfait,* 54 Wn. (2d) 413, 341 P. (2d) 154 (1959); *Annest v. Annest,* 49 Wn. (2d) 62, 298 P. (2d) 483 (1956); *Norman v. Norman,* 27 Wn. (2d) 25, 176 P. (2d) 349 (1947). The best interest of the child is the paramount and controlling consideration. *Johnson v. Johnson, supra.*

We agree with the appellant that the further reason for changing custody to the father, because better corrective treatment was available for the child's speech impairment in Seattle than in Idaho, is not supported by any evidence in the record. We believe this to be too speculative for the reason that the record does not disclose (1) that any corrective treatment may be required, or (2) that such treatment is not as readily available in Idaho.

We are cognizant of the well-established rule adopted by this court that the judgment of the trial court in child-custody matters will not be disturbed in the absence

of a manifest abuse of discretion. However, under the circumstances, as disclosed by the record, the transfer of this five-year-old child from the mother to the father amounts to a manifest abuse of discretion.

The judgment of the trial court is reversed and the case is remanded with directions that the divorce decree be modified providing that the physical custody of the child be placed in the mother with liberal provisions for visitation, in the discretion of the trial court, by the father to the child and the child to the father.

It is so ordered.

DONWORTH, FINLEY, ROSELLINI, and OTT, JJ., concur.

WEAVER, C. J., MALLERY, HILL, and FOSTER, JJ., dissent.